NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

DEC 27 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50068 |
| Plaintiff-Appellee, | D.C. No. 3:20-cr-01809-LAB-1 |
| v. | |
| RUDY ALVAREZ, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted November 15, 2022
Pasadena, California

Before: WARDLAW and W. FLETCHER, Circuit Judges, and KORMAN,**
District Judge.

Rudy Alvarez appeals from his conviction for aiming a laser pointer at an

aircraft in violation of 18 U.S.C. § 39A and sentence of five years' probation.

During a June 2020 protest in San Diego, a San Diego Police Department

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

("SDPD") helicopter was hit by a green laser beam. The helicopter pilot identified the suspected source of the laser beam as the "one person" in the crowd who was "looking right at the [helicopter's] camera." A description was provided to officers on the ground, stating that the suspect, who turned out to be Alvarez, was "a guy or a dude" with a "mask over his face," carrying a skateboard, "[w]earing a beanie," a "[l]ong-sleeved shirt," and "[m]aybe jeans." Undercover officers then located Alvarez.

Alvarez was arrested and placed in a police van with SDPD Detective Haughey and three other officers. The arresting officers transported Alvarez to the former Qualcomm Stadium (the "stadium"). The district court found that the police intended to question suspects at the stadium, not while transporting them.

At the beginning of the van ride, Detective Haughey told Alvarez: "Yes, so obviously you're under arrest for pointing a laser at a helicopter, you can't do that bro." Alvarez replied: "Yeah I figured that." The detective then asked: "You know they can crash right?" Alvarez responded: "No." The detective further explained the danger of pointing a laser at a helicopter. At one point in the van, Alvarez volunteered that he received a text from his sister that day saying, "I had a dream you were gonna get arrested today." An officer responded: "[B]ut you didn't have to man, everything was so good, you just pointed that stupid laser. You would have been fine." To which Alvarez replied: "Figure."

2

Once the SDPD arrived with Alvarez at the stadium, the police searched him and found a laser pointer in Alvarez's pocket. Detective Haughey and an FBI agent read Alvarez his *Miranda* rights and proceeded to interview him. When asked to "tell [the officers] what happened," Alvarez replied, in part: "Pointed it at it." Detective Haughey testified at trial that, in context of their conversation, he understood "it" to refer to the helicopter.

Before trial, Alvarez moved to suppress the one statement in the van the government proffered—("Yeah I figured that.")—and his subsequent Mirandized statements at the stadium. The district court denied the motion as to both statements. Alvarez contends that none of his statements were admissible at trial. He also argues that multiple improper statements were made by the prosecutor during closing arguments. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

1.      The district court did not err in denying Alvarez's motion to suppress his pre-*Miranda* statement while under transport. Interrogation for purposes of *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The district court correctly held that Detective Haughey's statement did not meet that

standard. The detective's statement on its face is not one that would be

"reasonably likely to elicit an incriminating response." *Id*. Indeed, we have held

that more forceful statements made by law enforcement officers in *United States v.*

*Moreno-Flores*, 33 F.3d 1164, 1168 (9th Cir. 1994), and *Shedelbower v. Estelle*,

885 F.2d 570, 572 (9th Cir. 1989), did not constitute an interrogation.

2.      The district court did not err in denying Alvarez's motion to suppress

the post-*Miranda* statements he made when questioned by law enforcement at the

stadium. Alvarez argues the officers' actions constituted an impermissible two-

step interrogation. But a *Miranda* violation does not necessarily require

suppression of the fruits of an unwarned statement. *See Michigan v. Tucker*, 417

U.S. 433, 445–51 (1974). Indeed, in *Oregon v. Elstad*, the Supreme Court held

that "[t]hough *Miranda* requires that the unwarned admission must be suppressed,

the admissibility of any subsequent statement should turn in these circumstances

solely on whether it is knowingly and voluntarily made." 470 U.S. 298, 309

(1985).

In *Missouri v. Seibert*, the Supreme Court noted that, unlike in *Elstad*, "[t]he

unwarned interrogation was conducted in the station house, and the questioning

was systematic, exhaustive, and managed with psychological skill. When the

police were finished there was little, if anything, of incriminating potential left

unsaid." 542 U.S. 600, 616 (2004) (plurality opinion). The type of police conduct

4

in *Seibert* was intentionally aimed at undermining *Miranda*. *Id.* at 609. Indeed, it was a technique "promoted . . . by a national police training organization[.]" *Id.*

Justice Kennedy, who cast the deciding vote in *Seibert*, explained that he would suppress the warned confession on the specific facts of that case: "When an interrogator uses this deliberate, two-step strategy, predicated upon violating *Miranda* during an *extended* interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps." *Id.* at 621 (Kennedy, J., concurring in the judgment) (emphasis added). Indeed, Justice Kennedy explained that he would suppress a subsequent warned statement "only in the infrequent case, such as we have here, in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622. Justice Kennedy's concurring opinion controls. *See United States v. Williams*, 435 F.3d 1148, 1154–57 (9th Cir. 2006).

Here, applying *Seibert*, the district court found "no evidence that there was any prearranged plan, as in *Seibert*, to start talking about the offense, or to mention certain things that would evoke from the defendant a response." Indeed, it found that the delay in providing *Miranda* warnings to those arrested at the scene of the protest was pursuant to "the obvious plan" that "[the officers were] not going to try to talk to people in the automobile" while they were transporting them, but instead

5

would "wait till [the officers got] them to the stadium." We find no clear error in these findings.

There was no "systematic" or "exhaustive" questioning of Alvarez in the police van. *See Reyes v. Lewis*, 833 F.3d 1001, 1031 (9th Cir. 2016); *Seibert*, 542 U.S. at 616 (plurality opinion). The police did not ask Alvarez whether he aimed the laser pointer at the helicopter. They did not ask him the most obvious question about the location of the laser pointer, which they had not yet found. And there was limited overlap between the pre- and post-warning questioning.

During the stadium interrogation, the detective did remind Alvarez of the pre-warning conversation in the van, stating: "I know when we contacted you, you said you knew it was a stupid idea kind of thing." Alvarez did not make this statement. The detective's reference to "a stupid idea kind of thing" possibly refers back to the detective's own use of the word "stupid" when talking to Alvarez in the van, not words spoken by Alvarez himself. Nonetheless, the detective did not "confront[] the defendant with [his] inadmissible prewarning statements and push[] [him] to acknowledge them" in a way that "resembled a cross-examination," as was the case in *Seibert*. *Id.* at 621 (Kennedy, J., concurring in the judgment). Nor, as there had been in *Seibert*, was there "little, if anything, of incriminating potential left unsaid" at the end of the unwarned interrogation (assuming that any conversation in the van could be characterized as

6

interrogation).  *Id.* at 616 (plurality opinion).  The police conduct here thus does not rise to the level of the calculated police tactics at play in *Seibert*.  Thus, we cannot say that the district court clearly erred in holding that the police did not conduct a deliberate two-step interrogation here.

3.      Alvarez argues that the prosecutor made several improper statements during closing argument, to only one of which he objected at trial.  We find the prosecutor's arguments during closing arguments troubling at times.  Nevertheless, even if the district court abused its discretion in overruling the defendant's burden-shifting objection (which we do not decide here), we find that any error was harmless.  The evidence against Alvarez was substantial.  The helicopter crew provided a detailed description of the person who appeared to be the source of the laser to officers on the ground.  Undercover officers were able to find Alvarez after learning from the officers in the helicopter that he was "near a person with a cart."  And when he was later searched at the stadium, Alvarez was found with a laser pointer.  Those facts, combined with his statements to the officers showing knowledge, constitute overwhelming evidence of Alvarez's guilt.  "In light of the strength of this evidence, the prosecutor's argument did not materially affect the fairness of [Alvarez's] trial," and it was therefore harmless.  *United States v. Ruiz*, 710 F.3d 1077, 1084 (9th Cir. 2013).  For the same reasons, the prosecutor's other statements during closing arguments, to which Alvarez did

not object at trial, do not constitute plain error.

**AFFIRMED.**